(98 South. 390)

**DENT et al. v. FOY et al.**

**FOY et al. v. DENT et al.**

**(4 Div. 76, 76A.)**

(Supreme Court of Alabama.  Oct. 11, 1923. Rehearing Denied Dec. 20, 1923.)

**1. Witnesses ⏤140(10)—Widow of decedent competent in controversy involving advancements made to children.**

The widow is a competent witness in a controversy between the distributees of an estate, involving advancements made by decedent, having no interest in the result which would render her incompetent, under Code 1907, § 4007, as her distributive share is carved alone out of the estate of which decedent died possessed, without reference to advancements, in view of § 3764.

**2. Witnesses ⏤140(7)—Statute held not to disqualify distributees from testifying concerning alleged advancements made to them by decedent; "interested in result."**

Code 1907, § 4007, providing that no interested person shall testify as to any transaction with deceased person, whose estate is interested, does not disqualify the distributees from testifying in a suit, under section 3773, as to whether gifts made by decedent to them were intended as advancements or absolute gifts, title having passed at the time of the delivery, as the estate has no interest, in view of Code 1907, § 3767.

**3. Descent and distribution ⏤115—Where property of substantial value given by decedent to his children presumption of advancement arises.**

A presumption will arise of an advancement making a prima facie case and shifting the burden of proof, where property, real or personal, of substantial value, "solidly useful in setting up the child in life," is given by decedent in his lifetime to his children, but the

prima facie case may be overcome by proof of a different intention, distinctly avowed by donor at the time property is delivered, or terms of the gift declared.

**4. Descent and distribution ⊜⇒115—Presumption that gifts were intended as "advancements" held rebutted.**

Where decedent, a prosperous citizen with a generous character and ability to give, made various gifts to his children, without making any memorandum or entry against the children, the presumption that the gifts were intended as "advancements," that is, a gift made in anticipation of the future share of the child which, under Code 1907, § 3767, would diminish to that extent the child's share of decedent's estate, *held* rebutted.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Advancement (To Child).]

**5. Descent and distribution ⊜⇒98—Whether gifts made by decedent intended as absolute gifts or advancements dependent on intent.**

In determining whether transactions between decedent and distributees were intended as gifts or advancements, the intent of decedent is controlling, and to show that they were advancements it must be shown that they were intended to be charged against their respective shares in his estate.

**6. Descent and distribution ⊜⇒106—Unnecessary to form technical pleadings in controversy over advancements.**

It is unnecessary that pleadings in a controversy relating to advancements be technically formed, in view of Code 1907, § 3773, the issues being made in writing as directed by the probate court.

**7. Descent and distribution ⊜⇒116—Competent to show transaction between decedent and distributee, and to show that it was a loan discharged in bankruptcy.**

In a suit to charge distributees with advancements, it was competent for complainant to show that decedent bought stock which was issued and delivered to distributee, and for distributee to show that he borrowed the money to pay for the stock from decedent, giving his note with the stock as collateral, and was afterwards discharged as a bankrupt.

**8. Bankruptcy ⊜⇒418(1)—Discharge in bankruptcy held to prevent set-off of debt against distributive share.**

Where decedent made loan to distributee as a discharge in bankruptcy during lifetime of decedent, relieved distributee from liability under the Bankruptcy Act, § 17 (U. S. Comp. St. § 9601), the administrator of decedent's estate was precluded, under Code 1907, § 2722, from allowing the debt as a set-off against distributee's share in the estate.

**9. Appeal and error ⊜⇒926(5)—Presumption that evidence presented in time where included in note of testimony, which does not mention motion to exclude.**

In a controversy between the distributees of an estate, though a copy of bankruptcy proceedings appear to have been filed after the cause was submitted, the court will presume that the evidence was presented in time, in view of rule 75, Chancery Court, vol. 2, Code 1907, p. 1551, where the note of testimony included these proceedings as part of the evidence, and does not mention any motion to strike it out.

Appeal from Circuit Court, Barbour County; J. S. Williams, Judge.

Bill in equity by Levy W. and Fred H. Foy against Helen A. Dent and others. From the decree respondents appeal, and complainants take cross-appeal. Affirmed in part, and reversed and rendered in part.

Rushton, Crenshaw & Rushton and S. H. Dent, Jr., all of Montgomery, for appellants.

When money or property is given by a parent to his child, it will be presumed to be an advancement, unless the nature of the gift or the intention of the intestate repels such presumption. Fennell v. Henry, 70 Ala. 484, 45 Am. Rep. 88; Booth v. Foster, 111 Ala. 312, 20 South. 356, 56 Am. St. Rep. 52; Malone v. Malone, 106 Ala. 567, 17 South. 676. Whatever the parent states at the time he gives property to his child is competent evidence to prove that he intended the gift to be absolute, and not to be accounted for as an advancement. Authorities supra. Where the estate of the decedent is not interested in the result of a controversy, the heirs and distributees may testify as to any controversy between themselves in the matter of the distribution or otherwise of the estate. Nolen v. Doss, 133 Ala. 259, 31 South. 969. Advancements are controversies between the parties who are entitled to participate in the distribution of the estate. Code 1907, § 3733. The distributee may make any defense to a debt contracted by him with the decedent, in his lifetime, that he might have made in a direct proceeding to recover the debt. Code 1907, §§ 2722, 2678; Robertson v. Black, 74 Ala. 322.

W. H. Merrill, of Eufaula, and Farmer, Merrill & Farmer, of Dothan, for appellees.

The theory is that every parent wishes to do equal justice to his children, and that money or property given to them during his lifetime is and was a part of their portion, unless the contrary appears. Mitchell's Distributees v. Mitchell's Adm'r, 8 Ala. 414; May's Heirs v. May's Adm'r, 28 Ala. 141; Autrey v. Autrey's Adm'r, 37 Ala. 614; Code 1907, § 3772; 16 R. I. 413, 16 Atl. 712, 3 L. R. A. 392, 27 Am. St. Rep. 745. As between a loan, a gift, and an advancement, the presumption is in favor of an advancement. 44 Kan. 431, 24 Pac. 946, 11 L. R. A. 805, 21 Am. St. Rep. 292, 294. Advancement defined. Fennell v. Henry, 70 Ala. 484, 45 Am. Rep. 88; Clements v. Hood, 57 Ala. 459; Merrill v. Rhodes, 37 Ala. 449; 1 R. C. L. 661; But-

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ler v. M. Ins. Co., 14 Ala. 777; Aylor v. Aylor (Mo. Sup.) 186 S. W. 1068. The burden of proof is on those who claim no advancement made. Rumbly v. Stainton, 24 Ala. 712. Respondents' testimony, in their own behalf as to advancements, was not admissible. Code 1907, § 4007; Key v. Jones, 52 Ala. 238; Hodges v. Dinney, 86 Ala. 226, 5 South. 492; Guin v. Guin, 196 Ala. 221, 72 South. 74; Moore v. Walker, 124 Ala. 199, 26 South. 984; Boykin v. Smith, 65 Ala. 294; Elec. L. Co. v. Rust, 131 Ala. 484, 31 South. 486. The fact that an heir or distributee owing a debt to the estate has received a discharge in bankruptcy does not prevent the deduction from his distributive share. Noble v. Tait. 140 Ala. 469, 37 South. 278; 18 C. J. 884; Sartor v. Beaty, 25 S. C. 293; Leitman's Estate v. Leitman, 149 Mo. 112, 50 S. W. 307, 73 Am. St. Rep. 374.

MILLER, J. George H. Dent died intestate on the 28th of February, 1918, leaving his widow, four children, and two grandsons, who are sons of a deceased daughter.

Administration of his estate was begun in the probate court of Barbour county; before final settlement, Levy W. Foy and Fred H. Foy, the two grandsons of the decedent, filed this bill of complaint against the widow, Helen A. Dent, individually and as administratrix of the estate, and the four children, Warren Y. Dent, George H. Dent, Jr., Louie H. Dent, and Helen Dent Williams. They seek by the bill to have the administration of the estate removed from the probate court to the circuit court in equity; they seek a sale of the real estate for division among the joint owners, on the ground that it cannot be equitably partitioned among them; and they also seek by the bill to charge the defendants George H. Dent, Jr., Louie H. Dent, and Warren Y. Dent with advancements of money or other property given them by the decedent in his lifetime, and to charge them with indebtedness due by them to the estate contracted by each of them with the intestate during his life.

Demurrers were interposed to the bill; they were overruled by the court; from this decree the defendants appealed, and it was affirmed by this court. Dent v. Foy, 204 Ala. 404, 85 South. 709.

The administratrix of the estate by petition sought to sell the real and personal property for division under petition instead of by this bill filed by the complainants, the grandsons of the decedent. This petition on pleading was dismissed by the trial court; and from it the defendants appealed to this court; and this decree was affirmed. Dent v. Foy, 206 Ala. 454, 90 South. 317. This is the third appeal to this court.

The court by decree refused motion to suppress deposition of Helen A. Dent, sustained motion of complainants to suppress the testimony of Warren Dent, George Dent, and Louie Dent offered in their own behalf; the decree charges Warren Dent with $4,000 received by him from decedent as an advancement, charges George Dent with $2,000 advancement, and Louie Dent with $6,500 advancement; and the court decreed that the real estate be sold for division among the joint owners.

From this decree the defendants Warren Y. Dent, George H. Dent, Jr., and Louie H. Dent appeal, and assign separately and severally as error that part of the decree which suppresses their testimony, and which fixes an amount received by each as advancements from the decedent.

The complainants take cross-appeal from the decree, and assign as error the decree of the court fixing the amount of the advancements obtained by the defendants from the intestate; and for overruling their motion to suppress deposition of Helen A. Dent.

[1] Helen A. Dent, the widow of the decedent, is a competent witness to testify in this controversy between the distributees of the estate, in which is involved advancements made by the intestate to his children. She had no interest in the result which could be affected by her testimony, and which would render her incompetent under section 4007 of the Code of 1907. If advancements were made to the distributees by the intestate, the distributive share of the widow in the estate would not be increased thereby, unless real estate was advanced in which she claimed dower, which is not the case here. Her distributive share must be carved alone out of the estate of which the decedent died possessed, without reference to the advancements. The court did not err in overruling the motion to suppress her deposition because of incompetency to testify on account of interest in the estate. Andrews v. Hall, 15 Ala. 85, headnote 4; Code 1907, § 3764.

[2] The motion of complainants to suppress the testimony of Warren Dent, George Dent, and Louie Dent, offered in their own behalf, was granted by the court. The court states:

"I have not considered the testimony which the respondents offer in their own behalf, for it is manifestly clear to me that the estate is interested in the effort to charge the heirs with advancements, and hence section 4007 applies. They cannot testify as I see the situation. If advancements are charged, the body of the estate is increased so much, in each instance, and these respondents cannot be heard to speak with regard to any transaction or conversation had with their deceased father."

Did the court err in suppressing the testimony of the respondents named? Yes. Were they competent to testify in the controversy between them and the other distributees involving the question of advance-

ments made to each of them respectively by the decedent during his lifetime? Yes.

"No person having a pecuniary interest in the result of the suit or proceeding shall be allowed to testify against the party to whom his interest is opposed, as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit or proceeding." Code 1907, § 4007.

Is the estate of George H. Dent, deceased, interested in the result of this suit or proceeding between the distributees, involving questions of advancements alleged to have been made by the decedent during his lifetime to the respondents, who are some of the distributees of his estate? We do not think so. If the estate of the decedent is not interested in the result of this controversy between the distributees as to advancements, then the distributees are not rendered incompetent as witnesses by section 4007 of the Code in this part of the suit or proceeding.

It is true in Hodges v. Denny, 86 Ala. 228, 5 South. 493, this court, in referring to and discussing this section 4007, correctly said, and which has been frequently quoted with approval, this:

"Its provisions exclude the living from testifying to any transaction between himself and the dead, in all cases where the effect of the evidence is to diminish the rights of the deceased, or those claiming under him, and where the presumption exists that the dead, if living, could explain, qualify, or contradict."

It is true the decedent, George H. Dent, could, if living, explain, qualify, or contradict the testimony of the distributees as to the alleged advancements made them by him; but the effect of their evidence will not diminish the rights of the deceased, and it will not diminish the rights of all those claiming under him. It may increase the rights of some, and diminish the rights of others, who claim under the decedent; but it will not operate on all alike who claim under him. The body of his estate will not be increased or diminished thereby.

The estate of the decedent is not interested in the result of this proceeding. The result will neither increase nor diminish the estate of the decedent. This is not a creditors' bill. The creditors are not interested in the result of this proceeding. The assets of the estate will not be increased or decreased by this proceeding; and it will not add to or take anything from the liabilities of the estate. The result of this proceeding simply affects the distribution as between the heirs. The estate of decedent is not financially interested in the question as to whether the gifts made by the intestate during his life to his heirs, the distributees, were intended to be absolute or to be accounted for as a portion of the distribution of his estate on final settlement. George

H. Dent, at his death, was not seized and possessed of these absolute gifts to or advancements made to his children by him during his lifetime. The title to them and the right to possession of them were not in decedent at the time of his death. The title to the gifts passed from the intestate to the distributees when the gifts, money or other property, were delivered to the children by their father. The title of the children to this property or money given to them by the donor is not questioned by this proceeding. Miller v. Eatman, 11 Ala. 613; Rumbly v. Stainton, 24 Ala. 712; Glover v. Woodward, 204 Ala. 63, 85 South. 270.

This property given by intestate to his heirs was not a part of the assets of his estate at his death. The widow of the deceased has no interest in it. Her distributive share of the estate is neither increased nor diminished by these gifts. Code 1907, § 3764, Andrews v. Hall, 15 Ala. 85.

The advancements must be considered as part of the estate, so far as regards the division and distribution thereof among the children, or their descendants of the deceased. Code 1907, § 3767. Advancements in this proceeding cannot be made liable for the debts of the estate of the decedent; they will not be liable for costs and expenses of the estate; they cannot be set apart as exempt to the widow and minors of the decedent from administration; they do not become a part of the assets of the estate to be administered; but they must be considered in the division and distribution only of the estate, as part of the estate, among the children or their descendants. Code 1907, § 3767. If the advancement to any heir exceeds his share in the estate, he is excluded from any further portion in the division or distribution of the estate; but he is not required to refund any part of such advancement. If the advancement is less than his share, he is entitled to as much as would give him a full share of the estate. The advancements do not enter into and become a part of the assets proper of the estate. They are not subject to the administration of the estate. Code 1907, §§ 3768, 3767, 3769; Caldwell v. Caldwell, 121 Ala. 601, 25 South. 825. The amount received by some distributees of the estate may be increased and others may be diminished by this suit or proceeding in regard to advancements; but the assets of the estate of the decedent will not be increased or diminished by this proceeding.

Section 2486 provides the damages, recoverable for the wrongful act, omission or negligence, causing death of intestate, are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distribution. The distributees are interested in the amount recovered. This

court has held that section 4007 does not disqualify the defendant, in a suit by the administrator or decedent for damages for wrongful death of intestate, from testifying in the cause, because the distributees of the decedent, and not the estate of decedent, are interested in the result of the suit or proceeding. Code 1907, § 2486; Kuykendall v. Edmondson, 205 Ala. 265, 87 South. 882.

The distributees of the estate of George H. Dent, deceased, are alone interested in the result of this proceeding as to advancements or absolute gifts made by him during his lifetime to some of the distributees, his children. His estate has no interest in it. It is a controversy between the distributees; those entitled to participate in the distribution of the estate. Code 1907, § 3773. So the respondents, the distributees, are not disqualified by section 4007 of the Code of 1907 from testifying in this proceeding. The trial court erred in sustaining the motions of complainants to suppress their testimony in this controversy as to whether the gifts were intended as advancements or absolute gifts to the children by the father during his lifetime.

[3, 4] The court in the decree found that George H. Dent in his lifetime made advancements to George H. Dent, Jr., in the sum of $2,000, which must be taken by him toward his share of the estate of the decedent. The appellant, this respondent, assigns this as error; the cross-appellants, the complainants, join issue, and claim the decree is correct in this particular.

Warren Y. Dent was by the decree charged with having received $4,000 from his father as advancements. This defendant, appellant, assigns this as error. The cross-appellant assigns it as error. They claim he should have been charged with receiving $8,000 instead of $4,000 advancements.

Louie H. Dent was by the decree declared to have received from the decedent as advancements the sum of $6,500. This defendant and appellant assigns this as error. The cross-appellants, complainants, also assign it as error. They claim the amount should have been $6,750; that he should have been charged with an additional sum of $12,000 as advancements or as indebtedness by him to the estate under the evidence.

"Any estate, real or personal, which has been given by any intestate in his lifetime, as an advancement to any child, * * * must be taken by such child * * * towards his share of the estate of the deceased." Code 1907, § 3767.

Chief Justice Brickell, in Malone v. Malone, 106 Ala. 569, 17 South. 676, wrote:

"A mere gift is not an advancement; it must be made in anticipation of the future share of the child in the estate of the parent."

This court, through Justice Stone, in Fennell v. Henry, 70 Ala. 486, 45 Am. Rep. 88, wrote:

"It must be a gift—a perfected gift, parting with the ownership—made during life to a child, or other lineal descendant. Its purpose must be to advance such child, or lineal descendant, in life. This is done, by giving, by anticipation, the whole, or a part, of what it is supposed a child will be entitled to on the death of the parent, and must be proved to have been intended as an advancement, chargeable on the child's share of the estate. * * * We think the natural import of this language is that when the subject of the gift has substantial value—will be solidly useful in setting up the child or descendant in life—then the prima facie intendment is that it is an advancement to be taken into account in distribution. But this presumption may be overturned by proof."

The court then in the opinion in that case quotes with approval this rule:

" 'The rule is that, when money or property is given by a parent to his child, it will be presumed to be an advancement under the statute, unless the nature of the gift repels such presumption; as in the case of trifling presents, money expended for education, etc.' Mitchell's Distributees v. Mitchell's Adm'r, 8 Ala. 414; Butler v. Mer. Ins. Co., 14 Ala. 777; Morrill v. Rhodes, 37 Ala. 449; Autrey v. Autrey's Adm'r, Ib. 614. So it is settled that what a parent says, at the time he gives property to child, is competent evidence of the intention with which the gift is made. See authorities supra; also Lawson's Appeal, 23 Pa. 85; Phillips v. Chappell, 16 Ga. 16."

When a prima facie case is made out by the complainants, the burden of proof shifts to the defendants, who claim no advancements were made. A presumption will arise in favor of an advancement, when the proof of complainants shows property, real or personal, of substantial value, "solidly useful in setting up the child in life," was given by the decedent in his lifetime to the defendants, his children; this will make a prima facie case, and will shift the burden of proof to the defendants. This presumption and prima facie case can be overcome or rebutted by the defendants, the donees and children of the intestate, "by proof of a different intention, clearly and distinctly avowed by the donor, at the time the property is delivered, or the terms of the gift declared before the delivery takes place." Rumbly v. Stainton, 24 Ala. 712; Miller v. Eatman, 11 Ala. 613.

George H. Dent, Jr., in 1898 was living in Washington, D. C. He purchased a drug business in that city. He testified:

"My father made me a present of·$2,000 with which to pay for the business. * * * The $2,000 was a gift from my father to me to pay the purchase price for said drug business. He never at any time stated that he intended that I should repay him this sum of money, nor did he charge the same against me on any books that he kept."

The decedent and Weedon were in the drug business in Eufaula. The partnership was dissolved. The drugs were divided. The decedent's part was estimated to be worth by some $3,000 and by others $4,000. The intestate gave these to his son, Warren Y. Dent; and he formed a partnership with C. H. Beach in 1897, and placed these drugs in their business. Warren Y. Dent testified:

"My father made me a present of such portion of his share of the old Weedon & Dent stock as I cared to select. * * * He insisted upon my taking them and entering business, and at his solicitation I did so. This same was a direct, out and out present from him to me. * * * I told him in the presence of my mother that I hoped that he would never regret giving me the stock to enter business. * * * This was a direct gift by my father to me."

He and Beach did business for several years. There was evidence that they owed the Eufaula Bank $5,000 evidenced by a note, made by the firm, with the intestate as indorser; and that Warren Dent bought out the interest of Beach in the business, assumed the payment of all debts due by the firm, and he testifies:

"That the outstanding indebtedness of the firm was paid by me as the continuing partner. I have no recollection of any accounts having been paid by my father. It has been many years ago, and I have no recollection of whom the firm owed."

Louie H. Dent, a child of the decedent, lived in Birmingham in 1909. His father purchased from A. A. Gaines and wife a house and lot in 1909, and paid for it $6,750, and had deed made to Louie H. Dent, and delivered it to him. Louie H. Dent testified:

"My father did give me a home in Birmingham, Ala., about 12 years ago. I desired to purchase a home, and was able to buy one of my own. I had selected a place that suited me in location and price, and was in the act of closing the deal for it. My father hearing of this, called me over the long-distance phone, and told me not to purchase the place until I heard from him. My father had given my sister, Helen Dent Williams, a home in Birmingham, on Eleventh avenue, where she resided. He wished me to have a home next door to her, as he was in the habit of visiting Birmingham very often, and desired that my sister and myself should be neighbors, in order that in his repeated visits he might have us all together. He kept me from purchasing the property I had selected, and purchased a home next door to my sister, which he made me a present of. He paid more for the place than it was worth or than I would have been willing to have paid for it. I knew nothing about the transaction until he handed me the deed, other than as above stated. When he handed me the deed, he stated that he wanted me to accept the place as my home, with his love and affection, as a present from him, and in order that he could visit his two children without inconvenience to him. I accepted the deed as a present and moved into the home."

The evidence shows that the decedent during his lifetime gave his daughter, Helen Dent Williams, a defendant in this cause, a home on Eleventh avenue, in Birmingham, where she resides. The price paid for it by the intestate is not shown or sought by the evidence of complainants in this bill to be made an advancement to her.

There is evidence that the intestate in his lifetime made some valuable gifts to his daughter, Nellie Belle Dent Foy, deceased, mother of complainants, in money and property; but the amount and value is not disclosed by any of the testimony. Her husband, W. H. Foy, the father of complainants, their agent and general manager in fact in the prosecution of this suit, testified as follows:

"Complainants did not claim any advancements against Helen Dent Williams, because acting for them I gathered the impression from conversations I had with George H. Dent during his lifetime that he did not expect or desire his daughter, Helen Dent Williams to account for anything he had given her, if he had given her anything. * * * Mr. Dent told me, as I have testified in my direct interrogatories, that he set his son Warren up in business and his son Louie up in business, and that they might have to account for it, and that they were not at all selfsustaining."

There was evidence that George H. Dent was a prosperous, successful, wealthy citizen, who delighted to give his family money and property; and left a large and valuable estate to be divided among them. His widow and children testify that his books and papers contained no memorandum of the gifts made by him to any of his children. One said:

"Nowhere on said books or any memorandum kept by him does there appear any charge of any money, property, or other thing of value given during his lifetime either to me or any of his other children."

The evidence without dispute discloses he was a generous father, able and willing to give good gifts of value to his children, which he did; and then left a large and valuable estate at his death.

The presumption of advancements implied by law is rebutted by the positive proof from the distributees, corroborated by their mother, sustained by the generous character and ability of the father to give, sustained by the circumstances that the decedent never made any entry of any kind or any memorandum against any of his children relative to any property or money given them during his lifetime. And W. H. Foy, who is the father of the complainants, and who has written authority from them to manage and control this proceeding, aided in rebutting the presumption of advancements implied by law when he testified:

"I gathered the impression from conversations I had with George H. Dent * * *. that

he did not expect or desire his daughter, Helen Dent Williams, to account for anything he had given her; * * * that he set his son Warren up in business and his son Louie up in business, and that they might have to account for it."

A further statement and discussion of the evidence is unnecessary.

[5] The intent of this intestate in giving this property to his children during his lifetime should govern and control the court in deciding this controversy as to advancements. It "must be proved to have been intended as an advancement, chargeable on the child's share of the estate." Fennell v. Henry, 70 Ala. 487, 45 Am. Rep. 88, and authorities supra. It is evident from the evidence and we hold that this donor intended this property as an absolute gift and not as an advancement to his children; and it is our opinion and we hold he did not intend that this property or money should be chargeable against their respective shares in his estate.

The complaint avers:

"That during the lifetime of the said George H. Dent he made advancements to his son Louie H. Dent at various and sundry times, consisting of large amounts of money and otherwise, the exact amount or amounts is to your orators unknown. And your orators aver that * * * Louie H. Dent * * * borrowed money or became otherwise indebted to said George H. Dent during his lifetime, and is now indebted to his estate in large sums, the exact amount of which is to your orators unknown."

Louie H. Dent answered this, and said: He denies that he ever had any advancements of large sums of money made to him by his father, George H. Dent, or that he borrowed money, or became otherwise indebted to the estate, and he denies that he is in debted unto the said estate in any way or manner whatsoever.

[6] Pleadings in such proceedings are not technically formed. The issue under the statute in probate court as to advancements must be made in writing under the direction of the court. Code 1907, § 3773. The averments in the bill as to the advancements and as to indebtedness are general and broad.

No averment in the bill indicates that this particular $11,600 debt or the note given for it, set out in the bankruptcy proceedings, is claimed by complainants as advancements or as a debt still due the intestate. Their sufficiency do not appear to have been questioned by demurrer and passed on by the court.

The indebtedness due the intestate by distributees constitutes assets of the estate. It is the duty of the administrator, and not the duty of the distributees, to collect them or to have them set off against the distributive share of the distributee in the estate. Code 1907, § 2722; Caldwell v. Caldwell, 121 Ala.

210 ALA.—31

598, 25 South. 825; Noble v. Tait, 140 Ala. 470, headnote 3, 37 South. 278.

[7] Under these broad averments and broad denials, in controversy between distributees, it was competent in proceedings of this nature for the complainants to prove that the intestate bought stock in the Birmingham Candy Company a corporation; paid $9,000 for $8,100 in stock, and later paid $2,600 or $3,000 for stock, and had all the stock issued in the name of Louie H. Dent, and delivered it to him. It was competent for Louie H. Dent to prove that he borrowed the $11,600 from his father to purchase this stock, gave his father a note for the $11,600, and attached the stock to the note as collateral to secure its payment; that during the lifetime of his father he went into bankruptcy; that this note and the debt evidenced by it was scheduled among his liabilities, and that intestate had notice of it, and that he was declared a bankrupt, and was duly discharged in bankruptcy.

[8] The complainants offer testimony showing that in 1910 or 1911 G. A. Nelson sold the intestate $8,100 in stock in the Birmingham Candy Company, and the stock was issued in the name of Louie H. Dent and delivered to him, and that intestate paid $9,000 to Nelson for it. Later Nelson sold the intestate more stock in this company, for which he paid him $2,600 or $3,000; the stock was issued, and delivered to Louie H. Dent. This testimony is not disputed. This defendant, Louie H. Dent, shows without dispute that he was insolvent, went into bankruptcy, a note made and given by him to George H. Dent for $11,600 for borrowed money on the 5th of December, 1911, was scheduled among his liabilities in the bankruptcy proceedings, and the note was secured by 166 shares, of $100 each, of stock in Birmingham Candy Company, a corporation, and this stock was attached to the note as collateral security; the schedule in the bankrupt court had this debt listed; that he was adjudicated a bankrupt, and that he was duly discharged in bankruptcy. This was shown by this defendant by certified copies of papers and proceedings in bankruptcy in the matter of Louie H. Dent in the District Court of the United States for the Southern Division of the Northern District of Alabama.

It is evident from these bankruptcy papers that Louie H. Dent gave his father a note for this $11,600, and secured it with this stock as collateral attached to the note. This evidences that a debt was contracted with and was due by him on this note to his father for it; and that it was neither a gift nor an advancement by his father to him; and we hold this $11,600 was a contract debt due his father by note, and not a gift nor an advancement by his father to him. Fennell v. Henry, 70 Ala. 484, 45 Am. Rep. 88; Grey v. Grey, 22 Ala. 233. This discharge of the

bankrupt, Louie H. Dent, in that court, as shown by the certified copy of the proceedings and decree of the court, releases him from liability for this debt evidenced by that $11,600 note given to his father. Bankruptcy Act, § 17 (U. S. Comp. St. § 9601); Williams v. U. S. Fidelity Co., 236 U. S. 549, 35 Sup. Ct. 289, 59 L. Ed. 713; vol. 7, C. J. p. 396, § 707, headnotes 96, 97. Section 2722 of the Code of 1907 provides, on final settlement of an estate, if any distributee owes the estate any debt contracted with the decedent in his lifetime, the court shall allow the same in favor of the administrator as a set-off against the distributive share of such distributee, and shall decree satisfaction of his distributive share to the extent of such debt; but the distributee may make any defense to the set-off that would be available to him in a direct proceeding for the recovery of the debt. Code 1907, § 2722; Caldwell v. Caldwell, 121 Ala. 598, 25 South. 825. This defense of discharge in bankruptcy by this distributee relieves him from liability for this debt, evidenced by the note, contracted by the distributee with his father in his lifetime; and the same cannot be allowed the administrator as a set-off against his distributive share in the estate. The trial court properly so held by its decree. This defense is available to him under this statute. The note was given for a debt contracted by this distributee with the decedent in his lifetime, which makes the statute applicable. Code 1907, § 2722; vol. 7, C. J. § 707, headnotes 96, 97.

[9] The complainants, cross-appellants, insist that the certified copy of the proceedings in the cause of Louie H. Dent in bankruptcy in the said District Court of the United States in Alabama should not be looked to and considered as evidence in this cause, because they were filed in the cause after this cause was submitted, and they made motion to strike them from the file because they came too late, etc.

The contention; this insistence of the cross-appellants, is unavailing in this court with this record. It is true that cross-appellants made motion on November 22, 1922, which appears in the record, to strike these papers from the file. We can find no ruling of the trial court on it. We find no mention of the motion in note of testimony of complainants; for this reason, no doubt, there was no ruling on it by the court. The decree of the court was rendered on January 6, 1923. It is true that these bankruptcy papers appear to have been filed by the register on November 18, 1922; but the note of testimony offered by the defendants, signed and noted by the register on the 13th day of November, 1922, refers to and describes these papers as part of the evidence of the defendants in this cause. Section 5 of this note of testimony of the defendants, filed and signed by the register on November 13, 1922, reads as follows:

"(5) Certified copy of the proceedings in bankruptcy in the District Court of the United States for the Southern Division of the Northern District of Alabama, in the matter of L. H. Dent, bankrupt, showing among his liabilities an indebtedness to George H. Dent for $11,600, and his discharge from said indebtedness on the 14th day of August, 1917."

The court will presume the evidence noted by the register on the submission of the cause was presented in time. The trial court and this court will look to the note of testimony made by the register for the evidence offered by the parties on the submission of the cause; and this testimony so noted by the register must be considered by the court in deciding the issues between the parties. Rule 75, Chancery Court, vol. 2, Code 1907, p. 1551, and authorities there cited.

That part of the decree ordering the property sold for division among the joint owners is not assigned as error by any party and is affirmed. That part of the decree overruling motion of complainants, cross-appellants to suppress the testimony of Helen A. Dent is affirmed. That part of the decree granting motions of complainants, cross-appellants, to suppress the entire testimony of Warren Y. Dent, George H. Dent, Jr., and Louie H. Dent, offered in their own behalf, is reversed; and a decree will be rendered here refusing and overruling these motions.

The trial court erred in that part of the decree which declares that Warren Y. Dent received $4,000, George H. Dent, Jr., $2,000, and Louie H. Dent $6,500, as advancements from the intestate during his lifetime, which are chargeable on their respective shares of his estate. The decree in these respects will be reversed, and one here rendered declaring this property was intended by the intestate as gifts and not as advancements to these children; and they are not chargeable against the respective shares of these distributees of his estate.

That part of the opinion is approved, and the decree of the court affirmed which holds that the $11,600 received in stock in Birmingham Candy Company by Louie H. Dent from his father was a debt contracted by him with the intestate during his life, evidenced by a note for it given by him to his father; it was not an asset of the estate, and could not be allowed as a set-off against this distributee's share of the estate, because this distributee could not now be made liable for it, as he had been discharged in bankruptcy from this debt during the lifetime of his father, and he is not now liable to the estate for it.

The complainants, cross-appellants, are taxed with the cost of this appeal.

The decree is affirmed in part, and reversed and rendered in part.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.